IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DEVIN HAMDEN, | ) |
| *Plaintiff*, | ) |
| v. | ) |
| TOTAL CAR FRANCHISING CORPORATION, | ) Case No. 7:12-cv-00003 |
| *Defendant.* | ) |

**MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS
OR COMPEL ARBITRATION**

The Plaintiff, Devin Hamden ("Hamden"), by counsel, files this response to defendant Total's Motion to Dismiss, and in support, he states as follows:

FACTS

1. Hamden began working with defendant Total in 1995/1996.

2. Upon agreeing to serve as a franchisee, Hamden signed a *Limited Rights Franchise Agreement* and a *Non-Competition and Confidentiality Agreement* in May 1996. The term of the franchise Agreement states it was for fifteen (15) years.

3. The Agreements with their respective attachments were attached to Defendant's Memorandum as Exhibit A (*Limited Rights Franchise Agreement*) and Exhibit B (*Non-competition and Confidentiality Agreement*).

4. Hamden's fifteen year contractual relationship with Total expired in May 2011.

5. Hamden stopped performing work for Total in December 2011.

1

6. In January 2012, Hamden filed a declaratory judgment action seeking the Court's ruling on the enforceability of various provisions in the attached Agreements and whether the Agreements restricted Hamden's future employment.

7. In response, defendant filed a Motion to Dismiss asking this court to compel arbitration under the Federal Arbitration Act.

### AGREEMENT AT ISSUE DOES NOT CONTAIN AGREEMENT TO ARBITRATE CLAIMS MADE BY PLAINTIFF

8. With regard to whether a right to arbitrate exists, the Court of Appeals for the Fourth Circuit has held that, although "state law might in some cases be applied in a diversity action to determine whether a right to arbitrate exists, federal law will preempt state law if the contract underlying a potentially arbitrable dispute evidences a transaction involving interstate commerce." Maxum Foundations, Inc. v. Salus Corp., 779 F.2d 974, 978 (4th Cir. 1985).

9. Specifically, in order to determine that the FAA does apply, a court must find (1) that there was an agreement in writing providing for arbitration and (2) that the contract evidences a transaction involving interstate commerce. See Am. Home Assurance Co. v. Vecco Concrete Constr. Co. Inc. of Va., 629 F.2d 961, 963 (4th Cir. 1980).

10. Although the Courts will uphold an Agreement to arbitrate when made by the parties, "The first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985).

### PARTIES DID NOT AGREE TO ARBITRATE HIS DISPUTE

11. "In determining whether the parties executed a valid agreement to arbitrate, courts generally apply ordinary state-law principles that govern the formation of contracts."

2

<u>Sydnor v. Conseco Financial Servicing Corp.</u>, 252 F.3d 302, 305 (4th Cir. 2001) (citing <u>First Options v. Kaplan</u>, 514 U.S. 938, 944 (1995)).

12.     Although defendant avers that Georgia law applies to Agreements at issue, and plaintiff has asked this Court to hold that Virginia law applies to the enforceability of the restrictive covenants found in each contract, the analysis under Virginia and or Georgia law is the same: Is there mutual assent in the Agreements at issue, that reflects an agreement to arbitrate the dispute before the Court?

13.     A close examination of the Agreements at issue indicate the parties did not agree to arbitrate the dispute brought before the Court in plaintiff's Declaratory Judgment action.

14.     The Agreement (Exhibit A) at issue states:

"Whenever any cause for disagreement may occur within the Colors on Parade Community, the parties will" attempt private negotiation, mediation and then arbitration. (¶12, Exhibit A).

15.     Section 12 states "The format of the arbitration process is this: One or each disputant submits a demand for arbitration to *us. We* will assist in the selection of arbitrator *and serve as case manager*." <u>Id</u> (emphasis added).

16.     In the recitals to the Agreement, page 1, paragraph 1, "we" and "us" are defined as Total Car Franchising Corporation, the drafting party of the Agreement.

17.     Clearly section 12 is written as an inter-office dispute guide and not meant to guide disputes between the Franchisee, Hamden, and Total Car.

18.     This unambiguous understanding is the only possible explanation as it would be impossible for Total to serve as the neutral third party *case administrator* who assists in

3

the selection of the arbitrator, and accepts the arbitration demand, in a case where Total is also the Defendant.

19. The dispute before this Court is whether or not the restrictive covenants in the Agreements, still apply to Hamden after his contract with Total expired.

20. The dispute is therefore outside the scope of the arbitration agreement.

21. In <u>O'Neal v. Total Car Franchising Corporation</u>, 27 So.3d 317 (2009) Court of Appeal of Louisiana, Second Circuit, held when asked to compel the exact same arbitration clause in a non-compete breach of contract case, found section 12 was not binding on the parties. The Court explained:

> "The franchise agreement contains a dispute resolution provision for "disagreements within the Colors on Parade community." The franchise agreement provides, in Section 12: "Colors on Parade has implemented a dispute resolution procedure involving three basic steps. *You agree* to abide by this procedure." (Emphasis added). The language does not specifically state that "we" agree to abide by the procedure. In the second step of the process, mediation is also addressed. The agreement states that "in cases of disputes among members of the community, *we will provide a list* of three suggested mediators to deal with the situation." The part of the provision relating to the third step, binding arbitration, provides: "One or each disputant submits a demand for arbitration to us. *We will assist in the selection of arbitrators and serve as case administrator."* (Emphasis added). These passages cast Total Car/Colors on Parade as a neutral administrator, not a disputant, in the "disputes" contemplated by this agreement.
>
> Colors on Parade argues that it is a member of the "Colors on Parade community," and thus obligated to follow the resolution procedure. However, this is inferential and does not address the specific language of Section 12. Despite the heavy weight of the presumption in favor of arbitration, we are not convinced that the "issue involved in this suit or proceedings is referable to arbitration under" the franchise agreement. La. R.S. 9:4202. Under these circumstances, the agreement "is not susceptible of an interpretation that could cover the dispute at issue." <u>Aguillard v. Auction Management Corp.</u>, 04-2804 (La.06/29/05), 908 So.2d 1, 18. <u>Id</u>."

22. The Louisiana court appropriately questioned how Total Car Franchising Corporation, could agree to serve as a case manager, in a case where they are also a party.

4

23.     Concluding instead that the provision related to inter-office disputes where corporate would act as a neutral third party, the Louisiana Court held arbitration was not agreed to by the parties and would not be binding over a dispute relating to the enforceability or breach of non-competition provisions.

24.     Under either Georgia or Virginia law, the first relevant question is whether the parties agreed to be bound by arbitration and in this case the answer is clear: no mutual assent exists relating to the application of arbitration to the dispute at issue.

25.     Even in light of the strong public policy in favor of arbitration (as cited by defendant), the court will not authorize arbitration where the contract does not evidence mutual assent.

26.     Furthermore, the Court cannot authorize arbitration where it would be inherently unfair to the plaintiff who cannot expect the defendant to serve as his neutral third party fact finder.

<u>SECTION 12, EVEN IF BINDING, EXPIRED WITH THE CONTRACT IN MAY 2011</u>

27.     Even if section 12 did not make Total the neutral third party in arbitration, it applies only to members of the Colors on Parade Community, a community that the plaintiff is no longer a member of as his contract expired in May and he stopped providing services in December of 2011.

28.     Nothing in Section 12 relates to future disputes and the term of the Agreement expired in 2011. (Exhibit A, Section 2).

29.     As such, even if Section 12 did relate to disputes between franchisees and Total, it has expired and as Hamden is no longer a member of the Colors community, his obligation to arbitrate has also expired.

## NON-COMPETITION AGREEMENT IS NOT BOUND BY ARBITRATION

30. Should the court find that Hamden remains a member of the Colors on Parade community and or that his dispute is bound by Section 12, it is important to examine the Non-Competition Agreement (Exhibit B) itself.

31. The Non-Competition Agreement does not in any way relate to, refer to or incorporate the franchise Agreement marked as Exhibit A.

32. Nor does it contain an arbitration provision, rather in states what is expected of the franchisee should he or she terminate their Agreement.

33. Absent a written agreement to arbitrate, the Courts cannot require it of the parties.

## CONCLUSION

34. In the agreement at issue, the language of the arbitration clause is unambiguous: Any interoffice dispute among the *Colors on Parade Community* (perhaps between franchisee and area developer) shall be handled outside of court, and Corporate shall attempt to act as a neutral in mediating a settlement.

35. It does not in any way bind Hamden to arbitration after his Contract ends.

36. Nor does it bind Hamden to arbitrate his claims against the defendant relating to the enforceability of restrictive covenants.

Plaintiff Hamden has established that Arbitration is not binding on his claims, under the Federal Arbitration Act. Defendant's Motion to Dismiss must be denied.

Dated this 6th day of February, 2012.

\_\_\_\_s/ Lauren Ellerman_____
T. Daniel Frith, III, Esq. (VSB # 22065)
Lauren M. Ellerman, Esq. (VSB #68464)
FRITH & ELLERMAN, PC

6

                                        P.O. Box 8248
                                        Roanoke, VA  24014
                                        Telephone: 540/985-0098
                                        Facsimile: 540/985-9108
                                        lellerman@frithlawfirm.com

## CERTIFICATE OF SERVICE

       I hereby certify that on this 6th day of February, 2012, a true and accurate copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification to Thomas M. Winn, III, Esquire Woods Rogers, 10 South Jefferson Street, Roanoke, Virginia  24038.