UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **DEVIN HAMDEN** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )    Case No. 7:12-cv-00003-JCT |
| | ) |
| **TOTAL CAR FRANCHISING** | ) |
| **CORP. d/b/a Colors on** | ) |
| **Parade** | ) |
| | ) |
|     **Defendant.** | ) |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS OR COMPEL ARBITRATION**

Defendant Total Car Franchising d/b/a Colors on Parade ("Defendant"), by counsel, hereby files its Reply Memorandum in response to Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss or Compel Arbitration ("Plaintiff's Opposition").

As discussed more fully below and in Defendant's Memorandum in Support of its Motion to Dismiss the Complaint or Stay Litigation and Compel Arbitration, Defendant and plaintiff Devin Hamden ("Plaintiff") entered into a valid franchise agreement (the "Franchise Agreement"), whereby the parties agreed to adhere to the Defendant's Dispute Resolution Procedure contained therein. As such, Plaintiff agreed to submit any disputes between him and Defendant to the Dispute Resolution Procedure and binding arbitration. Consequently, Defendant requests that this Court enforce the Franchise Agreement, compel arbitration, and dismiss the Complaint in its entirety, or in the alternative, stay the litigation.

I.  **THE CLAIMS AGAINST DEFENDANT SHOULD BE DISMISSED OR STAYED AND ARBITRATION COMPELLED**

   A.  **Plaintiff's Agreement to Arbitrate is Governed By, and Enforceable Under, the Federal Arbitration Act**

As discussed previously, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., enunciates a strong "federal policy favoring arbitration," Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983), requiring courts to "rigorously enforce agreements to arbitrate." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985).  The FAA provides that written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. § 2. Enforcement of an arbitration agreement is mandated under the FAA where the agreement is: (1) part of a contract or transaction involving commerce, and (2) valid under general principles of contract law.  9 U.S.C. § 2; Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 686 (1996). Because the Franchise Agreement involves commerce and is otherwise valid under general principles of contract law, the parties' arbitration agreement contained in the Franchise Agreement is enforceable pursuant to the FAA.

   B.  **Plaintiff's Motion to Dismiss the Complaint or Stay Litigation and Compel Arbitration Should Be Granted Because There Exists a Valid Written Agreement to Arbitrate; The Non-Competition and Non-Solicitation Provisions are Arbitrable Under the Franchise Agreement; and Plaintiff has Refused to Arbitrate the Dispute**

To compel arbitration under the FAA, a party must establish: (1) the existence of a valid written agreement to arbitrate; (2) whether the issue is arbitrable under the agreement; and (3) whether the party asserting the claims has failed or refused to arbitrate the claims. Collins v. Int'l Dairy Queen, 990 F. Supp. 1469, 1471 (M.D. Ga. 1998). Defendant's motion should be granted because it has established the above referenced requirements.

        1.    *A Valid, Written Dispute Resolution Procedure Containing an Arbitration Provision Governs the Dispute*

Plaintiff signed the Franchise Agreement with Defendant agreeing that he would be bound by the terms of the agreement. As such, Plaintiff executed a valid, written agreement containing an arbitration provision that governs this dispute. The validity of an arbitration agreement is determined through use of general state contract law principles. See Casarotto, 517 U.S. at 686-87 (1996); see also Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987) ("state law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally").

The Franchise Agreement is valid and enforceable under general principles of Georgia contract law as applied by both state and federal courts. There can be no legitimate contention to the contrary. Under Georgia law, "[i]t is the function of the court to construe the contract as written and not to make a new contract for the parties." See Michna v. Blue Cross & Blue Shield of Georgia, Inc., 288 Ga. App. 112, 113, 653 S.E.2d 377, 379 (2007). Where the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning. Id.

The Franchise Agreement clearly states that all disputes between members of the "Colors on Parade community" are to be handled in a manner consistent with the Dispute Resolution Procedure. (Franchise Agreement ¶ 12). Plaintiff contends that the Dispute Resolution Procedure applies only to "inter-office disputes where corporate would act as a neutral third party." (Plaintiff's Opposition ¶ 23). In support, he cites a Louisiana decision finding that the Franchise Agreement Dispute Resolution Procedure was not binding on the parties. See O'Neal v. Total Car Franchising, 27 So.3d 317 (La. App. 2009). However, the O'Neal Court erroneously placed undue emphasis on the fact that Defendant would assist in the selection of arbitrators and serve as a case administrator. Id. Further, with all due respect to the O'Neal

court, a federal district court in North Carolina faced with the same arbitration clause found the provision valid and enforceable. See Total Car Franchising Corp. v. Anderson, 1999 WL 1937599 (M.D. N.C. Aug. 26, 1999). In Anderson, the court correctly held that the arbitration provision contained in the Franchise Agreement Dispute Resolution Procedure was applicable, and that Defendant was a member of the Colors on Parade community and therefore subject to binding arbitration. Id.

Defendant has consistently identified itself as a member of the Colors on Parade community.[1] Furthermore, the case administrator provision in the Franchise Agreement serves only to facilitate the selection of a neutral panel of arbitrators. The process for selection of arbitrators, whereby "[t]he parties will each choose one arbitrator. The two arbitrators will select a third" ensures an unbiased and neutral arbitration process. (Franchise Agreement ¶ 12). Moreover, mere involvement by an employer or franchisee with the initiation of the arbitration process does not destroy an arbitration provision's validity. See, e.g., Lambert v. Austin Ind., 544 F.3d 1192 (11th Cir. 2008) (finding an arbitration provision valid wherein the employer would first determine if a dispute required arbitration and then arrange for initiation of arbitration on behalf of the aggrieved employee with the American Arbitration Association).

Moreover, the provision in the Franchise Agreement requiring Defendant to assist in the selection of arbitrators and serve as case administrator is commonly used and upheld by courts in collective bargaining agreements in the labor-management relations context under the National Labor Relations Act. The industrial reality in those relationships is that management representatives may facilitate the grievance and arbitration process, but that mere fact has not been deemed sufficient to impair the impartiality of the process because the outcome is dispute

resolution by a neutral third party ultimately selected by representatives of each side of the dispute. See, e.g., Harris v. Chem. Leaman Tank Lines, Inc., 437 F.2d 167, 169 (5th Cir. 1971). Defendant's potential involvement as a case administrator does nothing to diminish the facts that it indisputably is a member of the Colors on Parade community and that disputes under the process are resolved by a neutral third party selected by representatives or appointees of each party.

Furthermore, Plaintiff accepted the terms and conditions of the Franchise Agreement and the Dispute Resolution Procedure by signing the Franchise Agreement and enjoying years of financial benefits pursuant to the agreed upon franchisee relationship. The Franchise Agreement and Dispute Resolution Procedure are clear and unambiguous. Accordingly, pursuant to Georgia law, Plaintiff is required to resolve this dispute through the Dispute Resolution Procedure and ultimately, if necessary, binding arbitration.

    2. *Disputes Concerning the Non-Solicitation and Non-Competition Provisions Fall Within the Arbitration Provision of the Agreement*

Defendant's motion should be granted because the claims asserted herein are clearly within the scope of the Franchise Agreement. Defendant's Dispute Resolution Procedure broadly identifies the categories of claims or issues to which it applies. Specifically, the Dispute Resolution Procedure applies to "any cause or potential cause for disagreement [which] may occur within the Colors on Parade community." (Franchise Agreement ¶ 12). As such, Plaintiff's claims regarding the non-solicitation and non-competition provision, which cannot be described as anything other than a disagreement within the Colors on Parade community, are encompassed within the terms of the Franchise Agreement.

---

[1] If this Court were to find an arguable issue remains as to whether Defendant is a member of the Colors on Parade Community, Defendant respectfully requests an evidentiary hearing to establish sufficient proof on this matter.

Moreover, in cases involving broad arbitration clauses, the presumption of arbitrability is "particularly applicable," and only an express provision excluding a particular grievance from arbitration or "the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." United Steelworkers of America v. Mead Corp., 21 F.3d 128, 131 (6th Cir. 1994) (quoting United Steelworkers of America v. Warrior & Gulf Navigation, Co., 363 U.S. 574, 584-85 (1960)). Thus, where, as here, the scope of the arbitration provision is broad, encompassing all aspects of potential disagreements between Colors on Parade parties, any argument that the claims alleged are not covered must identify a particular provision excluding the claim or other "forceful evidence of a purpose to exclude." This Plaintiff cannot do.

Plaintiff argues without any explanation that the present dispute is "outside the scope of the arbitration agreement." (Plaintiff's Opposition ¶ 20). However, "[w]here a broad arbitration clause is in effect, even the question of whether the controversy relates to the agreement containing the clause is subject to arbitration." Wise v. Tidal Constr. Co., 261 Ga. App. 670, 583 S.E.2d 466 (2003). Thus, "any doubts concerning the scope or arbitrable issues should be resolved in favor of arbitration." the issue of arbitrability should be left to the arbitrator. BellSouth Corp. v. Forsee, 265 Ga. App. 589, 590-91, 595 S.E.2d 99, 101 (2004) (quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)).

Plaintiff agreed to abide by the Dispute Resolution Procedure as a condition of the Franchise Agreement. (Franchise Agreement ¶ 12). As such, Plaintiff made a mutual promise to arbitrate which constituted sufficient consideration. There is no clear implication that the parties intended for the arbitrability provision to end with the expiration of the contract nor does the Franchise Agreement provide for such a negation, as required to rebut the presumption favoring arbitrability of disputes over an expired agreement. See Nolde Bros., Inc. v. Local No. 358,

Bakery & Confectionery Workers Union, 430 U.S. 243, 354-55 (1977). As a result, Plaintiff should be required to submit his claims to binding arbitration in accordance with the Dispute Resolution Procedure. This Court, therefore, lacks subject matter jurisdiction over this Complaint and all matters must be submitted to arbitration per the terms of the parties' Franchise Agreement.

3.   *Plaintiff Has Refused to Submit His Dispute to Arbitration*

Defendant's motion should be granted because a dispute exists in this case which Plaintiff has refused to submit to arbitration. On January 3, 2012, Plaintiff filed a Complaint in this case on behalf of himself. Plaintiff alleged that the non-competition and non-solicitation provisions contained in the Non-Compete Agreement and Franchise Agreement do not apply to him. (Complaint ¶¶ 15-16). Plaintiff made no attempt to resolve any of his alleged claims through Defendant's internal policies and procedures and/or arbitrate his claims, as required by the Dispute Resolution Procedure. (Franchise Agreement ¶ 12). As such, his claim should be submitted to the Dispute Resolution Procedure contained in the Franchise Agreement, which requires submission to arbitration.

**C.   The Court Should Exercise its Discretion and Dismiss the Complaint in its Entirety**

Section 3 of the FAA directs a district court to enter a "stay of proceedings" in a case where the asserted claims are "referable to arbitration." See 9 U.S.C. § 3 (2009). Notwithstanding the terms of Section 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable. See Coffey v. Kellogg Brown & Root, 2009 WL 2515649 (N.D. Ga. Aug. 13, 2009) (citing Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709-10 (4th Cir. 2001)).

Here, all of Plaintiff's claims must be referred to arbitration. Therefore, it would serve no purpose for the Court to retain jurisdiction over this action. Accordingly, the Court should exercise its discretion and dismiss the action in its entirety and the parties should be directed to proceed to arbitration in accordance with the terms of the Franchise Agreement and the Dispute Resolution Procedure.

## II.  CONCLUSION

For the foregoing reasons, and the reasons stated in Defendant's Memorandum in Support of its Motion to Dismiss the Complaint or Stay Litigation and Compel Arbitration, Defendant respectfully requests that this Court enforce the terms of the Franchise Agreement and Dispute Resolution Procedure contained therein, compel arbitration, and dismiss the Complaint in its entirety.

Respectfully submitted,

WOODS ROGERS PLC


  /s/    Thomas M. Winn, III
Thomas M. Winn, III (VSB # 35758)
Wachovia Tower, Suite 1400
10 South Jefferson Street
Post Office Box 14125
Roanoke, Virginia  24038-4125
Telephone No. (540) 983-7600
Facsimile No. (540) 983-7711

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of February, 2012, a true and accurate copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, and that a true and accurate copy of the foregoing was sent via the CM/ECF system to the following participants:

> T. Daniel Frith, III, Esq.
> Lauren M. Ellerman, Esq.
> FRITH & ELLERMAN, PC
> P.O. Box 8248
> Roanoke, VA 24014
> Telephone: (540) 985-0098
> Facsimile: (540) 985-9108
> lellerman@frithlawfirm.com

                                                /s/ Thomas M. Winn, III