CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 22 2012

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | |
|---|---|
| DEVIN HAMDEN, ) | |
| ) | Case No. 7:12-cv-00003 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| TOTAL CAR FRANCHISING CORP., ) | |
| d/b/a COLORS ON PARADE, ) | By: Hon. James C. Turk |
| ) | Senior United States District Judge |
| Defendant. ) | |

This matter is presently before the Court on the Defendant's Motion to Dismiss or Stay Litigation and Compel Arbitration. (Dkt. No. 5). The Plaintiff opposed the motion (Dkt. No. 9) and the Defendant replied (Dkt. No. 11). The Court heard oral argument on the motion on March 2, 2012, and took the motion under advisement to allow the parties to pursue mediation. Mediation was not successful and thus, the motion is ripe for disposition. For the following reasons, the Defendant's Motion to Dismiss or Stay Litigation and Compel Arbitration is **DENIED.**

I. Background

Plaintiff Devin Hamden ("Hamden") was a franchisee of Defendant Total Car Franchising Corp. ("Total") starting in May 1996. Total is a franchisor in the automobile restoration business. As part of agreeing to be a franchisee Hamden signed a Limited Franchise Agreement ("Franchise Agreement") and a Non-Competition and Confidentiality Agreement ("Non-Competition Agreement"). The term of the Franchise Agreement was 15 years. The Franchise Agreement included a dispute resolution procedure providing for (1) private negotiation, (2) mediation, and (3) binding arbitration. (Dkt. No. 1-1, § 12). The Franchise

Agreement also included a covenant not to compete, in the section entitled "Rights and Duties of Parties Upon Expiration, Termination or Non-Renewal," which stated:

> **Post Term Competition-** For 2 years following the termination of this Agreement neither you nor any of your partner(s) or shareholder(s) shall engage in, or have any financial or management interest, directly or indirectly either as an officer, proprietor, agent, employee, director, shareholder, franchisee or partner, in any other mobile of fixed paint restoration business in the standard metropolitan statistical area in which the territory is located.

(Dkt. No. 1-1, ¶ 9). The Non-Competition Agreement provided a more detailed version of the covenant not to compete. Specifically, it prohibited competition "[d]uring the term of the Franchise Agreement" and provided that:

> If the Franchise Agreement is terminated before its expiration date, or if you assign or transfer your interest in the Franchise Agreement, to any person or business organization except according to Section 7 of the Franchise Agreement, then You covenant, for a period of 2 years after termination, transfer or assignment, not to engage as an owner, operator, or in any managerial capacity, in any business engaged in the same or similar type of appearance technologies within the metropolitan statistical area in which the Franchise Agreement's Designated Marketing Area is located, other than as an authorized franchisee or employee of another Colors on Parade franchise.

(Dkt. No. 1-2, at 1). Neither the Franchise Agreement nor the Non-Competition Agreement included a section containing defined terms, although a limited number of terms are defined in the recitals to the Franchise Agreement.

The Franchise Agreement expired in May 2011, but Hamden continued working as a franchisee. On November 30, 2011, Hamden notified Total that he would not be continuing with the franchise. After receiving a call from Total he completely ceased operations on December 1, 2011.

Hamden wished to open his own dent repair business but before doing so, even though he believed he was no longer bound by the Franchise Agreement and the Non-Competition Agreement, he contacted Total and informed them of his intentions. Total disagreed with Hamden's interpretation that Hamden was not bound by the Franchise Agreement and the Non-Competition Agreement. Upon learning of Hamden's intention to start his own business, Total informed Hamden they would take immediate judicial action to prevent him from doing so. Hamden then filed the instant action.

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." When evaluating a complaint under Federal Rule of Civil Procedure 12(b)(6), courts must "accept the allegations in the complaint as true, and draw all reasonable factual inferences in favor of the plaintiff." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Notwithstanding Rule 8(a)(2), the Supreme Court has specified that pleadings which merely offer "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" are not sufficient. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007)). Thus, while "detailed factual allegations" are not required, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id.

## III. Analysis

Total's motion to dismiss or to compel arbitration raises two legal issues: (1) whether the provisions regarding arbitration in the Franchise Agreement and the Non-Competition Agreement compel arbitration, and (2) whether this Court should dismiss the case after

3

compelling arbitration, if the Court rules arbitration is required. Hamden responds by arguing that the Franchise Agreement does not include an agreement to arbitrate the claims at issue and that even if the Franchise Agreement did cover the present issues, the requirement to arbitrate expired with the Franchise Agreement in May 2011. Furthermore, Hamden argues that the provision to arbitrate included in the Franchise Agreement does not extend to or govern the Non-Competition Agreement.

The Court first addresses the issue of whether the parties agreed to arbitrate the present dispute regarding whether Hamden may start his own independent business at this time or whether he is bound by the two year non-compete clause as detailed in the Franchise Agreement and the Non-Competition Agreement. The question of "[w]hether a party has agreed to arbitrate an issue is a matter of contract interpretation: '[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" Levin v. Alms & Assocs., Inc., 634 F.3d 260, 266 (4th Cir. 2011) (quoting United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)). Nonetheless, because the Supreme Court encourages a "healthy regard for the federal policy favoring arbitration," Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983), "any doubts concerning the scope of arbitrable issues should be resolved in favor or arbitration," Levin, 634 F.3d at 266. As the Fourth Circuit has said, there is a "heavy presumption" in favor of arbitrability. Id. (quoting Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 867 F.2d 809, 812 (4th Cir. 1989). With this standard in mind, the Court evaluates the language of the dispute resolution section in the Franchise Agreement to determine if it was intended to cover the current dispute, which is a dispute between the franchisee, Hamden, and the franchisor, Total.

Section 12 of the Franchise Agreement, specifies the three steps that must be taken in the event of a dispute. Step 1, regarding private negotiation, specifies "Whenever any cause of potential cause for disagreement may occur within the Colors on Parade community, the parties involved will enter into direct communication with one another." (Dkt. No. 1-1, at 9). If private negotiation is unsuccessful, step 2 directs the parties to pursue mediation. (Id., at 10). If no resolution occurs, step 3 specifies the procedures for binding arbitration, as follows:

> The parties will each choose one arbitrator. The two arbitrators will select a third. The parties will determine the forum for arbitration. If, however, the parties fail to establish a forum the standard rules of arbitration as set out by the American Arbitration Association will apply.... The arbitration will be binding and the decision of the arbitrators final.
>
> The format of the arbitration process is this:
>
>> One or each disputant submits a demand for arbitration to us. We will assist in the selection of arbitrators and serve as case administrator.
>>
>> Once the arbitrators are appointed, they will control the proceedings and all decisions will be final and binding and may be filed in a court of competent jurisdiction.

(Id.).

Hamden argues that Section 12 was intended to be an inter-office dispute resolution procedure and not intended to govern disputes between the franchisee and franchisor. (Dkt. No. 9, at 3). To support this position Hamden relies on a Louisiana decision, O'Neal v. Total Car Franchising Corp., 27 So.3d 317 (La. Ct. App. 2009), that held that the arbitration provisions did not compel arbitration in a non-compete breach of contract case. Total rejects this argument and reasons that the Louisiana decision placed "undue emphasis on the fact that Defendant would assist in the selection of arbitrators and serve as a case administrator." (Dkt. No. 11, at 3).

5

The arbitration clause provides, as noted above, "One or each disputant submits a demand for arbitration to **us**. **We** will assist in the selection of arbitrators and serve as case administrator." (Dkt. No. 1-1, at 10) (emphasis added). The recitals to the Franchise Agreement provide that Total is referred to as "'we' and / or 'us' throughout this Agreement." (Dkt. No. 1-1, at 1). Thus, the drafting of this provision suggests that Total, who is the defined party in "we" and "us," was not intended to be a disputant under this provision. If Total were a disputant they would submit their dispute to themselves, which makes little sense.[1] Indeed, as the Louisiana court said "these passages cast Total Car/Colors on Parade as a neutral administrator, not a disputant, in the 'disputes' contemplated by this agreement." O'Neil, 27 So.3d at 319.

Additionally, other portions of the dispute resolution section, not directly applicable to the present dispute, suggest the same outcome. First, the second sentence of the dispute resolution section states "**You** agree to abide by this procedure." (Dkt. No. 1-1, at 9) (emphasis added). The drafters chose "you" rather than "we" indicating that the drafter, Total, did not intend to be bound by the provision. See O'Neil, 27 So.3d at 319. Second, the language regarding mediation states "**we** will provide a list of three suggested mediators to deal with the situation." (Dkt. No. 1-1, at 10) (emphasis added). Again, this drafting suggests Total was to be seen as a neutral party to the dispute, rather than a disputant. See O'Neil, 27 So.3d at 319.

Finally, this Court finds Total's argument that O'Neal placed "undue emphasis" on Total's role in selecting the arbitrators unpersuasive. The question before this Court is not whether the process for selecting the arbitrators is fair, but rather whether the parties agreed to arbitrate the dispute at all. Concerns about the fairness of the selection process are secondary and immaterial to this Court's inquiry. This Court's reasoning, which discusses the fact that

---

[1] Defendant's argument that it is bound by the dispute resolution section by virtue of holding itself out as a member of the Colors on Parade community fails to address the section's specific use of the words "we" and "us" and thus is unpersuasive.

Total is involved in the selection process for arbitrators, is not a comment on the fairness of the process, but rather a statement about the meaning of the provision itself—and whether the provision would have been drafted in the same manner had it been intended to cover disputes between the franchisor and franchisee. Had the provision been intended to cover disputes between the franchisor and franchisee, this Court finds that it would have been drafted differently.[2]

## IV. Conclusion

Notwithstanding the "heavy presumption" in favor of arbitration, this Court cannot say that based on the language of the dispute resolution section, the parties agreed to arbitrate a dispute between the franchisor and franchisee, such as the current dispute. Accordingly, Defendant's Motion to Dismiss or Stay Litigation and Compel Arbitration is **DENIED**. An appropriate order shall issue this day.

ENTER: This 22nd day of May, 2012

                                                        Senior United States District Judge

---

[2] Defendant also argues that the court in Total Car Franchising Corp. v. Anderson, 1999 WL 1937599 (M.D. N.C. Aug, 26 1999) held that the arbitration clause at issue here was valid and enforceable. Defendant, however, mischaracterizes the holding in Anderson. In Anderson the court considered "whether a dispute resolution process conducted by the parties within a Jehovah's Witnesses Congregation constitutes 'binding arbitration' within the meaning of the parties' franchise agreement." 1999 WL 1937599, at 1. The court held Total failed to meet its burden on summary judgment and that there was a disputed material fact as to whether the Jehovah's Witnesses Congregation procedure was intended to be binding arbitration. In explaining the nature of the disputed material fact, the court noted that at least one of the parties may have believed the Jehovah's Witnesses Congregation procedure was "extra-contractual." Thus, the court in Anderson took no position on the scope of the arbitration agreement or whether the parties' dispute was suitable for arbitration under the section.